**Raymond T. PRYER**

v.

**Charles ZIMMERMAN, et al.**

**Civ. A. No. 88–0461.**

United States District Court,
E.D. Pennsylvania.

Oct. 12, 1989.

P.P., Graterford, Pa., and Kenneth Schreffler, Bensalem, Pa., for plaintiff.

Elizabeth J. Chambers, District Atty., Philadelphia Cty., Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On September 15, 1989, a Report and Recommendation was filed in this case by Hon. William F. Hall, Jr., United States Magistrate. In an order accompanying this memorandum, that Report and Recommendation is approved and adopted, and the petition for a writ of habeas corpus is denied.

In the Report and Recommendation, Magistrate Hall noted that petitioner had argued to both the Pennsylvania Superior Court and the Pennsylvania Supreme Court that:

1. Trial court erred in allowing the Commonwealth to strike for cause from the jury all persons who conscientiously were opposed to the death penalty.

2. Trial court erred in allowing the Commonwealth to empanel a death qualified jury in that there were no aggravating circumstances as required by [the Pennsylvania death penalty statute].

3. The evidence was insufficient as a matter of law to find the defendant guilty of murder in the first degree.

Report, at p. 1. In fact, an examination of the record makes it clear that these arguments were also presented to the trial court in post-trial motions, and in petitioner's *pro se* habeas corpus submissions to this court. At petitioner's request, counsel was appointed by Magistrate Hall to perfect and pursue petitioner's submissions, and appointed counsel filed a supplementary memorandum of law on petitioner's behalf. That statement of the issues was addressed by Magistrate Hall as the correct statement of petitioner's claim. Report, at p. 3.

Petitioner's appointed counsel stated that "[t]he proper question for this court to decide is not whether the two previous robbery convictions involved violence ... but rather, do two robberies constitute a significant history of felony convictions?" Plaintiff's Memorandum at p. 4. While this accurately reflects petitioner's second argument—namely, that there were no aggravating circumstances as required by the Pennsylvania death penalty statute—it does not reach his first argument, a sixth amendment challenge to the jury selection in his criminal trial. Nor is that argument addressed elsewhere in the papers supplied by counsel. While Pryer's second and third points on appeal are fully addressed in the Report and Recommendation,[1] his first argument is not. Given petitioner's persistent pursuit of the sixth amendment challenge in the state courts and his continued effort to articulate that argument in his *pro se* submissions here, I am reluctant to dismiss his application without an airing of those concerns. Therefore, I will now address his first ground for overturning his conviction.

---

1. Petitioner's claim of insufficiency of evidence was also not addressed in the supplementary filing made by counsel; however, it was addressed in the Report and Recommendation.

■ Petitioner's argument is based on the practice of excusing for cause those members of the jury panel who indicate that they would object to application of the death penalty. This process is challenged by petitioner, who relies on statistical studies which indicate that juries composed of those persons who are in favor of, or not opposed to, the imposition of the death penalty, are more likely to convict than are juries which include persons who indicate that they would avoid imposing capital punishment. Petitioner argues that a "conviction-prone" jury does not satisfy the sixth amendment requirements for conduct of a jury trial, as articulated in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

In *Witherspoon*, the petitioner, convicted of murder and sentenced to death, challenged the exclusion for cause of prospective jurors who stated that they had conscientious scruples against capital punishment. The Court overturned the conviction on the grounds that the exclusion of those who had conscientious scruples against capital punishment, but who had not indicated an unwillingness to *apply* that penalty, was an overbroad exclusion which denied Witherspoon a jury composed of a valid cross section of the community. En route to that conclusion, the Court took occasion to reject the argument that exclusion of jurors opposed to the death penalty would produce a "conviction-prone" jury; the Court found "the [Statistical] data adduced by the petitioner ... too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt." Today, Pryer presents to this court more recent psychological studies which conclude that so-called "death empaneled" juries are, in fact, more likely to make a determination of guilt.

While the proposition advanced may have substantial support in the psychological community, it was rejected by the Supreme Court in *Lockhart v. McCree*, 476 U.S. 162, 177–83, 106 S.Ct. 1758, 1767–70, 90 L.Ed.2d

137 (1986). In that case, McCree, convicted of murder in Arkansas, and sentenced to death, persuaded the Eighth Circuit that in light of nearly twenty years of study of jury composition, the *Witherspoon* requirement of less "tentative and fragmentary" statistical support had been met, and the partiality of "death-empaneled" juries proven.[2] But the Court, upon *certiorari*, rejected the view that impartiality of a jury depends on "the various predispositions of individual jurors" (*id.* at 178, 106 S.Ct. at 1767, emphasis omitted), holding instead:

> the Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.

*Id.* at 184, 106 S.Ct. at 1770. The *Lockhart* "death-empaneled" jury met that constitutional standard; accordingly, petitioner's claim must also fail.

## ORDER

For the reasons stated in the accompanying memorandum, the Report and Recommendation of William F. Hall, Jr., United States Magistrate, is hereby APPROVED and ADOPTED. The petition for a writ of habeas corpus is DENIED.

## REPORT AND RECOMMENDATION

September 15, 1989.

WILLIAM F. HALL, Jr., United States Magistrate.

Presently before this court is a petition for writ of habeas corpus filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petitioner is currently incarcerated at the State Correctional Institute at Graterford, in Montgomery county, Pennsylvania, where he is serving a sentence of life imprisonment plus two and one-half to five years. Petitioner was convicted of murder

---

**2.** Dozens of articles and surveys were presented for consideration, and an *amicus* brief was filed

by the American Psychological Association.

in the first degree and possession of an instrument of crime on November 17, 1986, by a jury in the Court of Common Pleas for Philadelphia. The trial was presided over by the Honorable Albert F. Sabo.

The petitioner's post-trial motions were denied by Judge Sabo. The Pennsylvania Superior Court affirmed the conviction, *Commonwealth v. Pryer*, 368 Pa.Super. 642, 531 A.2d 34, *appeal denied*, 517 Pa. 622, 538 A.2d 876 (1987), and the Pennsylvania Supreme Court denied allocatur on December 17, 1987. In his brief to the Pennsylvania Superior Court, petitioner, alleged, *inter alia:*

1. Trial court erred in allowing the Commonwealth to strike for cause from the jury all persons who conscientiously were opposed to the death penalty.

2. Trial court erred in allowing the commonwealth to empanel a death qualified jury in that there were no aggravating circumstances as required by 42 Pa. C.S.A. § 9711(d).

3. The evidence was insufficient as a matter of law to find the defendant guilty of murder in the first degree.

The same arguments were presented to the Pennsylvania Supreme Court in his petition for allocatur.

On January 21, 1988, petitioner filed for federal habeas relief pursuant to 28 U.S.C. § 2254. In this petition, he alleges two grounds for relief: (1) due process was violated because trial court erred in allowing the Commonwealth to empanel a death qualified jury since there were no aggravating circumstances under 42 Pa. C.S.A. § 9711(d); and (2), there was insufficient evidence to find petitioner guilty of first degree murder. The Commonwealth contends that petitioner has failed to exhaust his state remedies, since he did not present his claim of violation of 42 Pa. C.S.A. § 9711 to the state court as a due process claim, and in the alternative, his two claims are without merit. I recommend that the petition be denied.

## I. *Violation of 42 Pa. C.S.A. § 9711*

■ Before a federal court can consider the merits of a habeas corpus petition chal-

lenging a state conviction, the petitioner must "exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b). See also, *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The state courts must have a "fair opportunity to address the federal constitutional claim." *Picard*, at 275, 92 S.Ct. at 512.

Here, respondent contends that because the petitioner did not present his § 9711 claim under a due process theory, the entire petition should be dismissed as mixed under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In his brief to the Pennsylvania Superior Court, however, the petitioner did present his violation of § 9711 claim under a due process theory:

As was noted in the preceding section of this brief, the defendant is severely prejudiced by the empaneling of a death-qualified jury. Furthermore, to allege that since the defendant was not given the death penalty in this case, that the defendant cannot now complain is ludicrous. It is respectfully submitted that due process is due process and one should not have to be sentenced to death before he can contend a denial of his due process rights.

Brief for Appellant to the Superior Court of Pennsylvania at 14 (attached as Exhibit "A" to Response to Petition for Writ of Habeas Corpus). The same argument was presented to the Pennsylvania Supreme Court. *See Id.* at Exhibit "B". Therefore, petitioner has exhausted his state court remedies. *See Gonce v. Redman*, 780 F.2d 333, 336 (3d Cir.1985) (court has duty to scrutinize briefs to determine whether claim exhausted).

On July 24, 1989, petitioner's attorney filed a brief to clarify his claims. Thus, I will consider the attorney's brief as the correct statement of the petitioner's claim. In the brief, the petitioner argues that 42 Pa. C.S.A. § 9711(d) (Purdon 1982) was violated because there were insufficient convictions to constitute aggravating circumstances. Section 9711 is a state court rule

of procedure invoked after the jury has determined guilt in a first degree murder case, and provides what factors the jury can consider in deciding whether to sentence the defendant to death:

> (1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

> (2) In the sentencing hearing, evidence may be presented as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed and shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e). Evidence of aggravating circumstances shall be limited to those circumstances specified in subsection (d).

*Id.* at § 9711(a)(1)–(2). Among the aggravating circumstances of subsection (d) is whether "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." *Id.* at § 9711(d)(9) (Purdon Supp.1988).

Petitioner argues that he had no significant history of felony convictions because one of his two prior convictions was for robbery under 18 Pa. C.S.A. § 3701(a)(1)(v) (Purdon 1983),[1] and that this conviction did not involve the use or threat of force. In essence, petitioner argues that the trial court should have determined, prior to the trial, that there were no aggravating circumstances, and that therefore, a death qualified jury should not have been empaneled.[2] Thus, petitioner asks for a pretrial determination of whether the case is capital.

The statute that the petitioner calls into question is invoked only after a determination of guilt has been made, and its sole purpose is to help the jury determine whether the death penalty should be imposed. Contrary to the petitioner's contention, the determination can only be made after the jury determines guilt. The Pennsylvania Supreme Court has expressly stated that the trial court may not make a pretrial determination of whether a case is capital:

> Moreover ... we rejected the contention that pretrial certification of a case as capital or non-capital was desirable due to the "strong possibility" that a "death-qualified" jury would be conviction prone. We said that "[t]he requirement of individual voir dire in a capital case should give a defendant ample opportunity to explore for and isolate such bias."

*Commonwealth v. Tomoney,* 488 Pa. 324, 330, 412 A.2d 531, 539 (1980) (quoting *Commonwealth ex rel. Fitzpatrick v. Bullock,* 471 Pa. 292, 302 n. 8, 370 A.2d 309, 313–14 n. 8 (1977)) (prior law). Therefore, petitioner's contention that due process was violated must fail, because the trial court was expressly prohibited from making a pretrial determination of whether the case was capital.

Moreover, the argument that the two prior convictions were not sufficient to constitute an aggravating circumstance must fail because even if the court's determination were erroneous, any resulting error was harmless since the petitioner was not sentenced to death. Petitioner argues that because one conviction did not involve the use or threat of force, there were no aggravating circumstances under § 9711(d)(9). He does not argue that the statute is vague, but rather that it was erroneously applied. *Cf. Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985) (aggravating circumstances of significant history of felony convictions constitutional), *cert. denied* 475 U.S. 1150, 106 S.Ct. 1804, 90

---

**1.** The statue provides: "A person is guilty of robbery if, in the course of committing a theft, he: (v) physically takes or removes property from the person of another by force however slight." 18 Pa. C.S.A. § 3701(a)(1)(v) (Purdon 1983).

**2.** Petitioner's Attorney's sparse brief, designed to clarify petitioner's claims, is limited to arguing the single issue of whether there were sufficient convictions under § 9711(d)(9). I gather, however, that his attorney was attempting, albeit vaguely, to present the same argument to this court that petitioner presented to the Pennsylvania Superior and Supreme Courts.

L.Ed.2d 349 (1986). Assuming, arguendo, that trial court did err in allowing the jury to consider petitioner's prior convictions at the sentencing hearing, the error would not entitle petitioner to relief from his actual conviction.

The statute in question was designed to present aggravating and mitigating circumstances to the jury so that it could determine whether the death sentence should be imposed. The determination is to be made after the jury has found the defendant guilty of first degree murder. If the statute were violated, relief could only be granted as to the sentence, and not the actual conviction. Here, petitioner is not challenging the sentence, but the conviction itself. Moreover, any potential error was harmless because the petitioner did not receive the death penalty, but instead, the jury found offsetting mitigating circumstances to warrant the lesser sentence of life imprisonment. *See Martin v. Warden, Huntingdon State Correctional Inst.*, 653 F.2d 799, 810 (3d Cir.1981) (even if state court incorrectly applied its own laws, it would not ordinarily warrant federal habeas relief), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1019, 71 L.Ed.2d 306 (1982). Therefore, petitioner's claim as to the trial court's error in application of § 9711 should be denied.

## II. Insufficiency of the Evidence

■ Next, petitioner contends that the evidence adduced at trial was insufficient to convict him of first degree murder because of his claim of self defense. The standard of review for a federal court in a habeas action was set out in *Sullivan v. Cuyler*, 723 F.2d 1077 (3d Cir.1983). There, the court stated:

> the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 1084 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61

L.Ed.2d 560 (1979)). Therefore, I must review the record in a light most favorable to the Commonwealth to determine whether there is evidence to support a conviction of first degree murder.[3]

At the petitioner's trial, Robert Connor testified that while he was driving his taxi along Broad Street, near Louden Street in Philadelphia in the early morning hours of January 20, 1985, he saw four individuals running along Broad Street. (N.T. 3/10/86 at 43). The first individual ran in an arc across Broad Street and stumbled near the curb, while another pursued the first man. The second man reached underneath the first man, whereupon the witness saw two flashes. The second man began to turn away, but then turned back and the witness saw another flash. (N.T. 3/10/85 at 44). Connor transported the victim (Jeffrey Grayes) and some of the victim's friends to Einstein Hospital. The witness reported that he did not see any weapons on either the victim or his friends. (N.T. 3/10/85 at 53). He described the assailant as being 180 lbs, wearing a brown jacket, dark hat, gold rimmed glasses, and sneakers.

Next, Leonard Evans, a friend of the victim testified that earlier that night, he observed the victim arguing with petitioner (Pryer) outside of the YMCA on North Broad Street. Later, the victim identified Pryer as the person with whom the victim was arguing, and he then saw Pryer inside the YMCA arguing with the victim. (N.T. 3/10/85 at 66). He heard the victim say to Pryer "I ain't stab you." (N.T. 3/10/86 at 67). Next, he testified that the victim and Pryer went outside to fight, but that the fight never took place. He further stated that while walking home along Broad Street near Louden, he observed Pryer with a gun and saw Pryer pursue and shoot the victim. (N.T. 3/10/86 at 75–81).

Rodney Smith, another friend of the victim who was with the victim on the night of the incident corroborated Evans's testimony. Smith also identified Pryer as the as-

---

**3.** 18 Pa. C.S.A. § 2502(a) (Purdon 1983) provides: "Murder of the first degree—A criminal

homicide constitutes murder of the first degree when it is committed by an intentional killing."

sailant from a group of photos. (N.T. 3/10/86 at 173).

For the defense, Pryer called Tina Francis and Rita Pryer (petitioner's sister) to testify that while the victim and Pryer were about to fight outside of the YMCA, they observed that one person in the group had a knapsack or bag. Francis described the object as a knapsack, while Rita Pryer stated that someone had a plastic bag with a gun in it. (N.T. 3/11/86 at 71–89). Troy Adkins testified that while he was walking along Broad Street, near Louden, he was attacked by the victim and his friends, and that he saw one of the victim's friends with a gun, and heard gunshots, but did not see who fired the shots. (N.T. 3/11/86 at 115–16).

Raymond Pryer took the stand on his own behalf and testified that on the night of the incident, when he and the victim were about to fight outside of the YMCA, he observed Ronald Reddy (a friend of the victim) with a shotgun, and that someone told Reddy to shoot. (N.T. 3/11/86 at 167, 197). Further, while walking home that night, he saw the victim and his friends on Broad Street, near Louden, and heard someone say "bust him right there." He then observed someone pull out a shotgun. (N.T. 3/11/86 at 169). On cross examination, however, Pryer did not remember much about the incident, and testified that Stacey Dawson (a witness for the Commonwealth), warned him that the victim was after him, gave him a gun, and later lied in court about what happened that evening. (N.T. 3/11/86 at 206). Furthermore, Pryer did not remember shooting the victim.

It is not contested that the petitioner shot the victim, but rather whether he did so in self defense. The jury weighed the evidence and chose not to believe Pryer's story. Their conclusion is supported by the testimony of Robert Connor, who did not see any weapons. Furthermore, Stacey Dawson, the man who petitioner alleged gave him the gun, did not corroborate Pryer's story. The petitioner's credibility was further damaged by his inability to recall events regarding the shooting, or even whether or not he shot the victim.

After reviewing the evidence in the light most favorable to the prosecution, I find that the jury could have found the elements of first degree murder beyond a reasonable doubt.

### RECOMMENDATION

AND NOW, this 14th day of September, 1989, it is RECOMMENDED that the petition for writ of habeas corpus be DENIED, and that a finding be made that there is no probable cause for appeal.